# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IRMA PORTILLO,<br><br>      *Plaintiff*,<br><br>v.<br><br>IL CREATIONS INC.,<br><br>      *Defendant.* | Civil Action No. 17-1083 (RDM) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Irma Portillo, a former employee at the Uncommon Café, is suing Defendant IL Creations Inc., the restaurant's owner, for race/national origin discrimination, gender and pregnancy discrimination, and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. The matter is before the Court on Defendant's motion for summary judgment. Dkt. 13. For the reasons set forth below, the Court will **GRANT** summary judgment in favor of Defendant on Portillo's pregnancy discrimination claim and will **DENY** summary judgment as to the remainder of her claims.

## I. BACKGROUND

Portillo worked as a cashier at the Uncommon Café from June 2014 until her termination in August 2015. Dkt. 1 at 2 (Compl. ¶ 8). She alleges that, throughout her employment, her supervisor, Jiyoung Kim, forbade her from speaking Spanish at work, Dkt. 15 at 5 (Pl. Statement of Material Facts ("SMF") ¶ 81) (citing Dkt. 15-13 at 9 (Portillo Dep.)); denied her request to sit on a stool during her shift to accommodate her pregnancy, *id.* at 6 (SMF ¶¶ 90–93) (citing Dkt. 15-13 at 11 (Portillo Dep.)); and treated her (and the other Hispanic employees) less favorably

than the Korean employees at the restaurant, *id.* at 5, 7 (SMF ¶¶ 84, 96) (citing Dkt. 15-13 at 10, 18 (Portillo Dep.)).

Things came to a head when the CEO of IL Creations Inc., Steven Choi, conducted a site visit in August 2015. Dkt. 13-1 at 4 (Def. Statement of Undisputed Material Facts ("SUMF") ¶ 38). During the visit, Kim informed Choi that "Portillo would not listen to [her], or do what she instructed." Dkt. 13-1 at 10 (Choi Aff. ¶ 12). Choi then requested to meet with Portillo, Kim, and Jose Lopez, the General Manager of the store. Dkt. 15-16 at 6 (Choi Dep.). It is undisputed that, at this meeting, Portillo repeatedly accused Kim of being "a racist," *see* Dkt. 13-1 at 10 (Choi Aff. ¶ 12); Dkt. 15 at 10–11 (Pl. SMF ¶¶ 110–113). In response, Choi terminated Portillo on the spot. Dkt. 13-1 at 10 (Choi Aff. ¶ 12).

Defendant denies that either Kim or Choi engaged in any discriminatory or retaliatory conduct towards Portillo. With respect to Portillo's allegations about Kim, Defendant contends that Kim was merely enforcing the company's policies, which required employees to speak English in front of customers, Dkt. 13-1 at 4 (Def. SUMF ¶ 37) (citing *id.* at 31 (Yoo Aff. ¶ 9)), and prohibited cashiers from sitting at the register because "[it] was not an appropriate look," *id.* (Def. SUMF ¶ 32) (citing *id.* at 31 (Yoo Aff. ¶ 7)). Moreover, Defendant argues that Kim did not favor the Korean employees. Rather, the only two Korean employees at Uncommon Café worked as chefs in the kitchen and were permitted to eat breakfast on the job and to coordinate their own breaks because they were salaried employees. *Id.* at 3 (Def. SUMF ¶¶ 26–27) (citing *id.* at 31 (Yoo Aff. ¶ 6)). By contrast, Portillo was an hourly employee who had to punch in and out on a timecard. *Id.*

Choi, for his part, admits that he fired Portillo for calling Kim a racist. *See* Dkt. 13-1 at 10 (Choi Aff. ¶ 12) ("The only reason I terminated her was because she repeatedly called her Manager, Ms. Kim, a racist."). He explains, however, that:

> [Portillo] provided no information to support [her] claim.
>
> As an immigrant and minority myself, I found this conduct particularly reprehensible. There was no way Portillo could continue to work for the Company after repeatedly calling her supervisor a "racist." I told Portillo she was terminated right then and there, and asked her to leave the property.

*Id.* (Choi Aff. ¶¶ 10–11). Portillo's termination notice indicated that she was terminated for "insubordination" and "language"—specifically, "false accusation of her supervisor" for being a racist and failure to "follow the direction of her supervisor." Dkt. 13-1 at 54 (Termination Notice).

After she was terminated, Portillo filed a complaint with the Equal Opportunity Employment Commission ("EEOC"). Dkt. 15-3 (EEOC Determination). On August 16, 2015, the EEOC issued a decision letter that stated, in relevant part:

> [T]he evidence shows that [Portillo] had a good-faith basis for her complaint that [Defendant] was engaging in national origin discrimination. The evidence also established a strong causal connection between [Portillo's] protected activity and [Defendant's] issuance of the Employee Discipline Warning Notice that served as [her] termination notice.
>
> Based on the foregoing, . . . there is reasonable cause to believe that [Defendant] engaged in unlawful retaliation [against Portillo] in violation of Title VII when it terminated her employment.
>
> With regard to [Portillo's] remaining allegations, I make no finding . . . [T]he commission now invites the parties to join with it in reaching a just resolution of the matter.

*Id.* at 1–2 (EEOC Determination). The parties were unable to resolve the dispute in the conciliation process, and Portillo filed this lawsuit on June 7, 2017, alleging five counts: gender and pregnancy discrimination in violation of Title VII (Count I), Dkt. 1 at 3 (Compl. ¶¶ 9–12);

3

national origin/race discrimination in violation of Title VII and § 1981 (Counts II and III), *id.* at 4 (Compl. ¶¶ 13–21); and retaliation in violation of Title VII and § 1981 (Counts IV and V), *id.* at 5–6 (Compl. ¶¶ 22–29). Defendant's motion for summary judgment is now fully briefed. Dkt. 13.

## II. ANALYSIS

The Court concludes that, with respect to Portillo's race/national origin discrimination and retaliation claims, she has demonstrated a genuine dispute of material fact that precludes the entry of summary judgment. With respect to her pregnancy discrimination claim, however, Portillo has failed to adduce any evidence that she was terminated because of her pregnancy, or that Defendant denied her accommodation—but afforded accommodations to others of similar ability or inability to work—because she was pregnant. The Court will, accordingly, grant summary judgment in favor of Defendant on Count I, and deny summary judgment as to the remaining counts.

### A. Race/National-Origin Discrimination Claims

To begin, Portillo alleges "she and other Hispanic employees [at Uncommon Café] were subjected to . . . unequal terms and conditions of employment based on their national origin and race." Dkt. 1 at 2 (Compl. ¶ 8) (Counts II and III).[1] Specifically, Portillo testified that Kim shouted at her and the other Hispanic employees, prohibited them from speaking Spanish, and

---

[1] Because Portillo's Title VII claims overlap with her § 1981 claims, the same analysis applies to both. *See Battle v. Truland Sys. Corp.*, 30 F. Supp. 3d 9, 17 (D.D.C. 2014) ("Under Section 1981 as under Title VII, Plaintiff must demonstrate by a preponderance of the evidence that the actions taken by his employer were 'more likely than not based on the consideration of impermissible factors' such as race, ethnicity, or national origin." (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981))); *see also Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (applying the same framework to adjudicate Title VII and § 1981 retaliation claims).

4

prohibited them from taking a break to eat breakfast—privileges the two Korean employees were afforded. Dkt. 15-13 at 9–10 (Portillo Dep.). In response, Defendant principally argues that it is entitled to summary judgment because none of these acts rose to the level of an adverse employment action. Dkt. 13-2 at 7–8, 12–15. The Court is unpersuaded.

To be sure, "not everything that makes an employee unhappy is an actionable adverse action." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (internal quotation marks omitted). Rather, to qualify as "adverse," the alleged action must materially alter the terms or conditions of the plaintiff's employment. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see also Baird v. Gotbaum*, 662 F.3d 1246, 1248 (D.C. Cir. 2011). The inquiry is objective. The Court must ask whether "a reasonable trier of fact could conclude that the plaintiff has suffered *objectively tangible harm*." *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999) (emphasis added), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Although courts in this Circuit have held that a mere change in work schedule or increase in workload does not constitute an adverse employment action, *see Saba v. U.S. Dep't of Agriculture*, 26 F. Supp. 3d 16, 25 (D.D.C. 2014); *Brown v. Georgetown Univ. Hosp. Medstar Health*, 828 F. Supp. 2d 1, 9 (D.D.C. 2011), a change in work conditions that adversely affects the plaintiff's health may suffice, *see Achagzai v. Broadcasting Bd. of Governors,* No. 17-612, 2018 WL 4705799, at *7 (D.D.C. Sept. 30, 2018); *see also Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 144 n.8 (D.D.C. 2004).

Here, the fact that Kim allegedly refused to allow Portillo to eat breakfast on the job and denied her requests to take breaks might rise to the level of an adverse employment action. If Portillo were, for example, denied the ability to take *any* break between the start of her shift, which, at times, was as early as "five or six [a.m.]," Dkt. 15-13 at 10 (Portillo Dep.), and lunch,

5

that could be sufficiently deleterious as to alter a material "condition" of her employment. The Court cannot conclude one way or another, however, because of the paucity of evidence in the record. It is unclear whether the cashiers had any scheduled breaks (aside from lunch), and, if so, how often they could take a break, and whether they could eat during those breaks. Portillo only testified that she was supposed to be given "15 or 10 minutes for breakfast" at around "7 [a.m.]," but that Kim "didn't let anybody . . . have breakfast." *Id.* at 10–11 (Portillo Dep.). She also stated that she did not eat breakfast at home because she had to "sometimes start work at five or six [a.m.]," *id.* at 10 (Portillo Dep.), and her commute was over an hour, *see* Dkt. 15-11 (describing her commute). Defendant does not address this evidence at all; it only points to an affidavit from Yoo explaining why the Korean chefs were permitted to take breaks. *See* Dkt. 13-1 at 30–31 (Yoo Aff. ¶ 6). The Court, accordingly, declines to enter summary judgment in Defendant's favor on the ground that Portillo has failed to allege an adverse employment action.

Although it is a close issue, the Court further concludes that a reasonable trier of fact could find in Portillo's favor on this claim. Defendant proffers a non-discriminatory reason why the Korean employees, but not Portillo or the other Hispanic employees, were permitted to eat breakfast and to take breaks: The Korean chefs were salaried and thus entitled to determine their own schedules. *Id.* at 3 (Def. SUMF ¶ 26) (citing *id.* at 30–31 (Yoo Aff. ¶ 6)). But a reasonable jury could find that reason pretextual. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) ("[Once] an employer has asserted a legitimate, non-discriminatory reason for the decision," the district court is left with "one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee . . . ?"). Although the distinction between salaried and hourly workers explains why

the Korean chefs were given more autonomy than the Hispanic employees, it does not explain why Portillo was categorically denied the right to eat breakfast or to take a break. It also does not explain why Kim yelled at the Hispanic workers but not the Korean employees. To be sure, Portillo's evidence that Kim acted with discriminatory intent is thin and entirely circumstantial. But, at this stage, the Court cannot conclude, in light of the above, that no reasonable jury could find—based on Kim's pattern of behavior towards the Hispanic staff—that Kim was motivated by race/national-origin discrimination.

Moreover, Defendant's English-only rule may also give rise to a viable disparate treatment claim. This poses a novel legal question the D.C. Circuit has yet to address. The EEOC has promulgated a regulation, which states: "[R]equiring employees to speak only English at all times in the workplace is a burdensome term and condition of employment" that the Commission "presume[s]" to violate Title VII.[2] 29 C.F.R. § 1606.7. That regulation is not binding on this Court, but the view of an expert agency at least bears consideration. *See EEOC v. Premier Operator Servs., Inc.*, 113 F. Supp. 2d 1066, 1074 (N.D. Tex. 2000) (noting that the agency's interpretation of Title VII on this issue is entitled to "deference"). On the other hand, as noted above, the law is clear that, to qualify as an adverse employment action, an employer's conduct must rise to the level of affecting the employee's "terms, conditions, or privileges of employment or future employment opportunities." *Baird*, 662 F.3d at 1248 (citation omitted).

---

[2] Other courts have held that an English-only rule can, absent a business justification, support a claim for hostile work environment. *See, e.g.*, *Maldonado v. City of Altus*, 433 F.3d 1294, 1306 (10th Cir. 2006) ("We cannot say that on the record before us it would be unreasonable for a juror to agree that the City's English-only policy created a hostile work environment for its Hispanic employees."), *overruled on other grounds by Burlington N.*, 548 U.S. 53; *Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1489 (9th Cir. 1993) (refusing to "foreclose the prospect that[,] in some circumstances[,] English-only rules can exacerbate existing tensions, or, when combined with other discriminatory behavior, contribute to an overall environment of discrimination"). Portillo, however, has not alleged a hostile work environment claim here.

Under that test, which unlike the EEOC rule, is binding, the Court can conceive of circumstances under which a limitation on an employee's ability to speak with co-workers (and others) in her native language might qualify as an adverse employment action, and other circumstances under which it would not. The Court is unable, however, to draw any conclusions based on the present record, because there is little evidence about how the rule was applied, and what little evidence exists is conflicting. Accordingly, viewing the evidence in the light most favorable to Portillo, Defendant has failed to satisfy its burden under Federal Rule of Civil Procedure 56(c).

In light of the above, the Court will deny Defendant's motion for summary judgment as to Portillo's disparate treatment claim on the basis of her race/national-origin.

**B.     Retaliation Claims**

The Court will also deny Defendant's motion for summary judgment as to Portillo's retaliation claims because there is a genuine issue of material fact as to whether Portillo called Kim "a racist" as an insult or whether she intended to make a report of racial discrimination protected under Title VII and § 1981. *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."); *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 446 (2008) (holding that § 1981 encompasses retaliation claims).

Defendant argues that Portillo's outburst during the meeting with Choi was rude and insubordinate—*not* protected activity. Specifically, Choi testified that Portillo failed to offer any evidence during the meeting to substantiate her accusation, Dkt. 15-16 at 6 (Choi Dep.), and that the General Manager, Lopez, stated—in front of everyone—that there was no reason to think that Kim was racist, *id.* at 8 (Choi Dep.). Yoo also stated in his affidavit that, prior to this incident,

8

Portillo had never utilized the reporting mechanism set forth in the Employee Handbook to complain about Kim's alleged conduct. Dkt. 13-1 at 32 (Yoo Aff. ¶ 13). Portillo counters that she gave Choi a number of examples of Kim's discriminatory conduct: She informed Choi that Kim shouted at Hispanic employees, that she did not permit them to speak Spanish, and that she had preferences for Korean rather than Hispanic employees. Dkt. 15 at 9–10 (Pl. SMF ¶ 107) (citing Dkt. 15-13 at 13–14 (Portillo Dep.)). Portillo further testified that she and the other Hispanic employees had complained about Kim's behavior to the General Manager, Jose Lopez. Dkt. 15 at 12 (Pl. SMF ¶ 117) (citing Dkt. 15-13 at 12 (Portillo Dep.) ("Yes, they would tell Jose [Lopez] about this, but I think Jose was scared.")); Dkt. 15-12 at 1 (Portillo Decl. ¶ 5) (describing her own complaint about Kim denying her breaks). Viewing the above evidence in the light most favorable to Portillo (the nonmovant), the Court concludes that Defendant is not entitled to summary judgment on Portillo's retaliation claims because a reasonable trier of fact could infer that Portillo was terminated for reporting what she believed to be racial discrimination—*not* for being insubordinate.

C.   **Pregnancy Discrimination Claim**

The Court will, however, grant summary judgment in favor of Defendant on Portillo's pregnancy discrimination claim. The Pregnancy Discrimination Act ("PDA") amended the definition section of Title VII. The first clause of the PDA specifies that Title VII's reference to "on the basis of sex" includes "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). The second clause states that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." *Id.*

Portillo argues that Defendant violated Title VII because Kim refused to accommodate her pregnancy by allowing her to remain seated while at the cash register.[3] *See* Dkt. 15 at 16–18 (arguing that Defendant had an affirmative obligation to accommodate her pregnancy). That argument is misplaced. As Defendant correctly observes, Title VII imposes no such free-standing obligation on employers to accommodate on the basis of pregnancy. To the contrary, the cases and regulations that Portillo cites, *see id.*, concern the employer's obligations under the American with Disabilities Act of 1990 ("ADA"), which covers pregnancy-related "impairments or conditions that 'substantially limit[] one or more major life activities.'" *Webster v. U.S. Dep't of Energy*, 267 F. Supp. 3d 246, 267 (D.D.C. 2017) (quoting 42 U.S.C. § 12102(1)); *see also Spees v. James Marine, Inc.*, 617 F.3d 380, 397 (6th Cir. 2010) ("Pregnancy-related conditions have typically been found to be impairments where they are not part of a 'normal' pregnancy."). Here, Portillo has neither alleged an ADA claim, nor has she provided any evidence that her pregnancy resulted in "impairments or conditions" that constitute a disability under the ADA.

Accordingly, the only pregnancy discrimination claim that Portillo can pursue under Title VII is one that alleges that Kim's denial of her request to use a stool "constituted disparate treatment" based on her pregnancy status. *Webster*, 267 F. Supp. 3d at 256 (citing *Young v. U.S. Parcel Service, Inc.*, 135 S. Ct. 1338, 1345 (2015)). To make out a prima facie case, the plaintiff must show that "she belongs to the protected class, that she sought accommodation, that the

---

[3] To the extent that Portillo is also alleging that she was terminated because of her pregnancy (a claim she neither raised in her complaint nor briefed), that claim fails as a matter of law. Portillo has conceded that Choi, the only decisionmaker in this case, was unaware that she was pregnant at the time he terminated her. Dkt. 13-1 at 10 (Choi Aff. ¶ 12); *see also* Dkt. 15 at 5 (Pl. SMF ¶ 86). She further agrees that she was terminated because she accused Kim of being "a racist." Dkt. 15 at 10–11 (Pl. SMF ¶¶ 111–15).

employer did not accommodate her, and that the employer did accommodate others 'similar in their ability or inability to work.'" *Id.* (quoting *Young*, 135 S. Ct. at 1354). The burden then shifts to the employer to show "'legitimate, nondiscriminatory' reasons for denying her accommodation." *Id.* If the defendant succeeds, the burden then shifts back to the plaintiff to demonstrate pretext—for instance, by providing evidence that "the employer's policies impose a significant burden on pregnant workers," or that "the employer's 'legitimate, nondiscriminatory' reasons are not sufficiently strong to justify the burden, but rather—when considered along with the burden imposed—give rise to an inference of intentional discrimination." *Id.* Once the employer offers a legitimate non-discriminatory reason for its action, however, the Court "need not—*and should not*—decide whether the plaintiff actually made out a prima facie case." *Brady v. Sergeant at Arms*, 520 F.3d at 490, 494 (D.C. Cir. 2008) (emphasis in original). At that point, the only question for the Court is "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008).

Here, Defendant contends that Portillo's request was denied for a legitimate, non-discriminatory reason: "The Company does not permit cashiers at Uncommon Café to sit in a chair while working at the registers" because "[w]e do not believe it is an appropriate appearance for cashiers to be seated while customers pay for their food standing over them." Dkt. 13-1 at 31 (Yoo Aff. ¶ 7); *see also id.* at 4 (Def. SUMF ¶ 32) (citing same). Portillo testified, however, that Kim sat while operating the register, Dkt. 15-13 at 11 (Portillo Dep.), and that Kim stated that she was denying her request because "[she] didn't comply with any of [Kim's] orders," *id.* But, even if Portillo's testimony is sufficient to create a genuine issue of material fact as to whether

Defendant's justification was pretextual, it does not answer the "ultimate question": "whether the employer intentionally discriminated," *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 146 (2000), against Portillo based on her pregnancy. Simply put, Portillo has offered no evidence that Kim refused to allow her to sit while at the cash register because she was pregnant or that Kim granted similar accommodations to other employees who had difficulty standing for extended periods of time, but refused her the same accommodation based on her pregnancy. To the contrary, as Portillo herself testified, Kim refused to allow her to sit because she was upset that Portillo allegedly refused to follow orders. Although that may be an unfair reason, it does not evince disparate treatment in violation of Title VII and the PDA. The Court, accordingly, concludes that—on the present record—no reasonable juror could conclude that Kim's decision was motivated by pregnancy discrimination.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's motion for summary judgment is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** with respect to Portillo's pregnancy discrimination claims (Count I) and **DENIED** with respect to the remainder of her claims (Counts II through V).

It is further **ORDERED** that the parties shall appear for a status conference on April 8, 2019, at 10:30 a.m., in Courtroom 21 to discuss further proceedings in this case.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: March 31, 2019